# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JANE DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Judge Joan B. Gottschall |
| v. ) | |
| ) | Case No. 12 C 9213 |
| JOHN ROE, UNKNOWN OFFICERS, ) | |
| ROBERT GEDVILLE, and the VILLAGE ) | |
| OF JUSTICE, ) | |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Jane Doe has filed a nine-count Second Amended Complaint against Officer John Roe in his individual capacity, the Village of Justice ("the Village"), Chief Gedville of the Village police department, and unknown officers. Now before the court is the Village's motion to dismiss Doe's claims against the Village pursuant to Federal Rule of Procedure 12(b)(6). For the reasons stated below, the court grants the motion in part and denies it in part. The motion to dismiss is denied as to Counts III-VII and IX. The motion to dismiss is granted as to Count VIII, and that count of the complaint is dismissed with prejudice.

### I. BACKGROUND

For purposes of the motion to dismiss, the court accepts the allegations in the Second Amended Complaint as true. Doe alleges that on May 5, 2012, she was waiting on the street for a cab when Roe stopped his Village police vehicle near her. Roe, clad in full uniform, questioned Doe and asked for her identification. He reported her name to the police dispatch operator. He then told Doe to get into the car, made her sit next to him, and told the cab that had

just arrived to wait until summoned. Roe pulled into a poorly lit spot in a parking lot, walked around to the passenger seat, and forced Doe to perform oral sex on him.

Doe alleges she went to the Village police department the following day to report the assault. Chief Gedville told her to file her complaint with the Burbank Police Department. When she did so, the Burbank police contacted the Village police, who conducted an internal investigation and sustained Doe's complaint. Doe alleges that the Village should have known when it hired Roe that he was unfit for his position and would create a danger to the public. She further alleges that the Village breached its duty to train and supervise Roe.

Doe has sued Roe, along with Chief Gedville, the Village, and unknown officers. In Count I, Doe alleges, pursuant to 42 U.S.C. § 1983, that by using his official authority to force Doe to perform oral sex on him, Roe violated Doe's substantive due-process rights under the Fourteenth Amendment. In Count II, Doe alleges that Roe violated the Fourth Amendment by subjecting her to false arrest and unreasonable detention. In Counts III, IV, and V, she alleges that Roe committed assault, battery, and intentional infliction of emotional distress ("IIED"), in violation of state law, and that the Village is liable for his acts pursuant to the doctrine of *respondeat superior*. Count VI seeks indemnification from the Village, pursuant to 745 Ill. Comp. Stat. 10/9-102, because Roe committed the alleged acts in the scope of his employment with the Village. Count VII is a *Monell* claim against the Village, pursuant to § 1983, in which Doe alleges that the Village had informal policies, practices, or customs that proximately caused her injury. Those policies included "negligent hiring," as well as:

> a. allowing, encouraging and permitting its police personnel to conduct unreasonable searches and seizures of person and property, failing to train its police personnel to conduct reasonable searches and seizures of person and property, and/or failing to provide its police personnel adequate training to determine the presence or absence of grounds to conduct reasonable searches

> and/or seizures; negligently supervising its police personnel regarding searches and seizures;
>
> b. allowing and encouraging the filing of false reports, and giving false statements and testimony about said searches and/or seizures;
>
> c. failing to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control officers in their employ particularly when for years, the Village has known its officers engaged in misconduct during searches and seizures of persons and property, including community caretaking functions and *Terry* stops;
>
> d. promoting, advocating and/or allowing the police code of silence, where officers refuse to report or otherwise cover-up instances of police misconduct despite their obligations under the law and police regulations . . . .

(Second Am. Compl. ¶ 63, ECF No. 17.) Finally, Counts VIII and XI assert state-law negligent hiring and retention and negligent supervision claims against Chief Gedville and the Village.

The Village moves to dismiss all claims against it in the Second Amended Complaint. As to Counts III, IV, and V, the Village argues that it cannot be liable for assault, battery, or IIED committed by Roe under the doctrine of *respondeat superior*, because Roe was not acting within the scope of his employment as a police officer when he committed the alleged acts. As to Count VI, the Village claims that it has no duty to indemnify Roe for any judgment entered in connection with the state law claims. As to Count VII, the Village argues that Doe's attempt to plead a *Monell* claim is insufficient to meet the pleading requirements of Federal Rule of Civil Procedure 8(a). Finally, as to Counts VIII and IX, the Village claims that is immune under the Local Government and Governmental Employees' Tort Immunity Act, 745 Ill. Comp. Stat. 10/1-101 *et seq.*, from claims of negligent hiring and retention and negligent supervision.

## II. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must comply with Federal Rule of Civil Procedure 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must include "sufficient detail to give

the defendants fair notice" of the claims alleged against them. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). The complaint must also "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of the motion to dismiss, the court takes all facts alleged in the complaint as true and draws all reasonable inferences from those facts in favor of Doe, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

### III. ANALYSIS

**A. Counts III, IV, and V: *respondeat superior* liability**

The Village argues that it cannot be held liable for Roe's conduct in violation of Illinois law under a *respondeat superior* theory because Roe was not acting within the scope of his employment as a Village police officer when he committed the alleged acts. The Village is correct that, "under a traditional *respondeat superior* analysis, an employer can be liable for the torts of his employee . . . only [if] those torts . . . are committed within the scope of that employment." *Wright v. City of Danville*, 675 N.E.2d 110, 117 (Ill. 1996). Illinois courts apply the following criteria in determining scope of employment:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master, . . .
> . . . .

> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

*Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (Ill. 1989) (quoting Restatement (Second) of Agency § 228 (1958)).

According to the Village, Illinois courts consistently hold that acts of sexual assault are outside the scope of employment. *See Deloney v. Bd. of Educ. of Thornton Twp.*, 666 N.E.2d 792, 783-84 (Ill. App. Ct. 1996) (listing cases and explaining that "[i]n the context of *respondeat superior liability*, the term "scope of employment" excludes conduct by an employee that is solely for the benefit of the employee"). The Village argues that Roe's conduct stemmed purely from his personal motivations, was not of the kind he was employed to perform, and was not actuated by any purpose to serve the Village.

Illinois courts have also stated, however, that "[s]ummary judgment is generally inappropriate when scope of employment is at issue." *Pyne*, 543 N.E.2d at 1308. "Only if no reasonable person could conclude from the evidence that an employee was acting within the course of employment should a court hold as a matter of law that the employee was not so acting." *Id.* Thus, Illinois courts have frequently declined to grant summary judgment (let alone a motion to dismiss) when scope of employment is at issue.

The Seventh Circuit has also reversed courts in this district for granting summary judgment based on scope of employment. *See, e.g.*, *Jones v. Patrick & Assocs. Detective Agency, Inc.*, 442 F.3d 533, 535-36 (7th Cir. 2006). In *Jones*, a security guard gained access to a police station holding cell and beat up two teenagers who were in detention. The district court held that the guard's employer was not liable under the doctrine of *respondeat superior*, because the unprovoked attack was not part of the guard's job-related duties. The Seventh Circuit,

however, did "not believe it is beyond dispute that [the guard] left his professional identity and position behind him when he assaulted the plaintiffs." *Id.* at 536. It emphasized that the guard

> was still on duty, still wearing his uniform, and still carrying his employer-issued weapons at the time of the attacks. It was not as if [he] spotted [the victim] a few days later at Wrigley Field and decided to get even with him there during a lull in action occasioned by a pitching change. And even though the holding cell area at the police station was "officially" off-limits to him, it's doubtful that [he] would have been able to talk his way back there if he were anything other than a security guard in uniform. All these factors weigh in favor of finding that the issue of *respondeat superior* liability is for the jury to decide.

*Id.* at 536. The court also noted that "physical confrontations are part of a security guard's job, and it's not really surprising that once in a while one of them will go too far." *Id.*

Following this precedent, other courts in this district have held that "[s]cope of employment is a fact-intensive issue" that is usually inappropriate for summary judgment. For example, in *Arias v. Allegretti*, the district court denied summary judgment where plaintiffs sought to hold the City of Chicago responsible for sexual battery committed by a police officer under a *respondeat superior* theory. No. 05 C 5940, 2008 WL 191185, at *5-6 (N.D. Ill. Jan. 22, 2008). The court noted that "the Seventh Circuit, in addressing police actions, has suggested that the scope of employment should be interpreted more broadly when the employee is a police officer." *Id.* at *5 (citing *Doe v. City of Chi.*, 360 F.3d 667, 671 (7th Cir. 2004)). It also emphasized the Seventh's Circuit's "warning against trying to resolve indemnity before liability." *Id.* at *6. In *Doe v. Lee*, the district court relied on the same Seventh Circuit precedent in denying summary judgment to a municipality on the theory that a police officer who allegedly sexually assaulted an intern was not acting within the scope of his employment. No. 11 C 6102, 2013 WL 1883288, at *8 (N.D. Ill. May 6, 2013).

This court will heed that same advice and will not resolve the issue of *respondeat superior* liability at the motion to dismiss stage of this case. A reasonable person could conclude

6

from the allegations in the complaint that Roe's actions were within the scope of his employment. Roe stopped Doe while he was on-duty, driving his police vehicle, wearing his uniform and badge, and carrying his department-issued weapon. He ran Doe's identification and reported her name to dispatch. This conduct was within the scope of what a police officer is employed to do as part of his community policing duties. Furthermore, and similarly to the situation in *Jones*, Roe would not have been able to make Doe get into his car "if he were anything other than a [police officer] in uniform." *Jones*, 442 F.3d at 536. The court therefore denies the Village's motion to dismiss as to Counts III, IV, and V.

## B. Count VI: indemnification

The Village moves to dismiss Count VI on grounds identical to those discussed above. It argues that it has no duty to indemnify Roe for any judgment on the state-law claims, because sexual misconduct does not fall within a Village police officer's scope of employment. "The general rule . . . is that an employer is liable for an intentional tort committed by its employee only if . . . the employee's motive . . . in committing the tort was to serve his employer." *Doe*, 360 F.3d at 670 (citing *Wright*, 675 N.E.2d at 117-18). But "[t]he issue of [a c]ity's responsibility for the torts of its police officers is a difficult one that [a] district judge should not [attempt] to resolve before the actual facts bearing on the issue [a]re determined." *Id*. at 673. The court concludes that a judgment regarding indemnification at this stage of the proceedings would be premature and denies the Village's motion to dismiss as to Count VI.

## C. Count VII: *Monell* claim

The Village can be held liable under § 1983 only if the alleged constitutional violation—here, an unreasonable search and seizure—resulted from the execution of one of its policies. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). This may be established by alleging:

(1) an express policy that caused the constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled that it constitutes a policy; or (3) that the constitutional injury was caused by a person with final policy-making authority. *See Lewis v. City of Chi.*, 496 F.3d 645, 656 (7th Cir. 2007). Here, Doe relies on the second theory—she alleges that the Village had widespread informal practices and customs, including a lack of proper training and supervision of officers, that caused the deprivation of her rights. To establish *Monell* liability based on evidence of inadequate training or supervision, as Doe attempts to do in this case, she must allege "deliberate indifference" on the part of the Village. *See Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029-30 (7th Cir. 2006). Such indifference can be demonstrated by (1) failure to provide adequate training in light of foreseeable consequences, or (2) failure to act in response to repeated complaints of constitutional violations by officers. *Id.*

Here, in addition to the specific allegations about Roe's actions, Doe alleges that the Village failed to "properly train, supervise, discipline, transfer, monitor, counsel, and otherwise control" its officers, and that the Village promoted or allowed a "police code of silence" to protect officers from internal discipline or civil or criminal liability. She alleges that the Village permitted officers to avoid reporting or cover up instances of police misconduct. She further alleges that the Village negligently hired unfit personnel and lacked policies to prevent officers like Roe from obtaining positions wherein they could engage in misconduct like that directed toward her. She alleges that the Village knew that Roe had previously been suspended for ethics violations and hired him despite the fact that he was unfit to carry out patrol duties. And she specifically alleges that Chief Gedville directed her to file her complaint in Burbank in order to hinder the investigation of Roe's conduct. According to Doe, the Village acted with deliberate

indifference in maintaining these policies.  Doe alleges that after the complaint was referred to the Village, the Village conducted a full internal investigation.[1]

The Village argues that Doe's allegations are merely boilerplate *Monell* language, and that the only facts alleged with any specificity demonstrate that the Village in fact investigated her complaint against Roe.  The Village contends that Doe's conclusory assertions are insufficient to establish the existence of a policy or widespread practice that caused Doe's alleged constitutional injuries.

The Village is correct that a plaintiff must plead some specific facts supporting a claim that a municipality maintained a policy, custom or practice that caused a constitutional deprivation.  *See McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011).  Moreover, "[a] single isolated incident of wrongdoing by a nonpolicymaker is generally insufficient to establish municipal acquiescence in unconstitutional conduct."  *Cornfield v. Consolidated High School Dist. No. 230*, 991 F.2d 1216, 1326 (7th Cir. 1993).  Doe's claim does include a great deal of conclusory language about "interrelated informal policies."  And some of her allegations, such as that the Village "encourage[d] the filing of false reports," have no apparent connection to the violation at issue here.

Courts in this district, however, have allowed *Monell* claims to proceed "even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing."  *Riley v. Cnty. of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010).  Here, Doe specifically pleads Roe's actions toward her, and then alleges that the Village failed to properly train its officers with regard to conducting searches and seizures and community caretaking functions.  She further alleges that the Village permitted

---

[1] Doe states in her response that the Village suspended Roe for 27 days—the amount of paid vacation he had accrued.  But that allegation does not appear in her complaint.

officers to avoid reporting or to cover up instances of police misconduct. And she specifically alleges that Chief Gedville directed her to file her complaint in Burbank in order to hinder the investigation of Roe's conduct. Finally, she alleges that the Village knew that Roe had previously been suspended for ethics violations and hired him despite the fact that he was unfit to carry out patrol duties. Drawing all inferences in favor of Doe for purposes of the motion to dismiss, these allegations allege a widespread informal policy on the part of the Village that caused Roe's injury. The allegations support the inferences that Village police officers were permitted to commit offenses without fear of discipline, and that the Village failed to train officers in order to prevent improper contacts with the public that were predictable in light of the officers' policing duties. The court also finds that, at this early stage in the proceedings, these allegations are sufficient to put the Village on notice of the claims against it. *See, e.g.*, *Otero v. Dart*, No. 12 C 3148, 2012 WL 5077727, at *4-5 (N.D. Ill. Oct. 18, 2012) ("Otero need not identify a specific unlawful policy at this stage because he sufficiently describes the policy or practices at issue."); *Wiek v. Keane*, No. 09 C 0920, 2010 WL 1976870, at *4 (N.D. Ill. May 12, 2010) (holding that a plaintiff "is not required to provide extrinsic evidence that a policy existed"). Because Doe has sufficiently pled a *Monell* claim, the court denies the Village's motion to dismiss Count VII of the complaint.

**D. Counts VIII and IX: negligent hiring and retention and negligent supervision**

Doe alleges in Count VIII that the Village should have known that Roe and other officers were unfit to serve as police officers. She alleges that Roe had previously been suspended or terminated from two other police departments in the previous five years and had been disciplined for ethics violations. She claims that the Village's negligent hiring and retention of Doe, in

10

violation of state law, proximately caused her injuries. In Count IX, Doe alleges that the Village negligently supervised Doe and other officers in violation of state law.

The Village moves to dismiss the negligent hiring, retention, and supervision claims on the grounds that the claims are barred by § 10/2-201 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act (the "Tort Immunity Act"). That section states:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 Ill. Comp. Stat. 10/2-201. "Section 2-201 immunity applies to public entities, since public entities are not liable if their employee is not liable." *Doe 20 v. Bd. of Educ. of the Cmty. Unit Sch. Dist. No. 5*, 680 F. Supp. 2d 957, 988 (C.D. Ill. 2010) (citing *Arteman v. Clinton Cmty. Unit Sch. Dist. No. 15*, 763 N.E.2d 756, 762-63 (Ill. 2002)). According to the Village, hiring and retention are discretionary functions, as is supervision of employees, and the Tort Immunity Act protects the Village from tort liability based on such acts.

Doe responds that hiring and firing police officers might be "ministerial" rather than discretionary. But Illinois courts have held that hiring and firing are discretionary decisions, requiring a balancing of many different competing considerations. *See, e.g.*, *Rogers ex rel. Rogers v. Cook*, No. 08 C 2270, 2008 WL 5387642, at *4 (N.D. Ill. Dec. 23, 2008) (dismissing claim that school district negligently retained security guard as barred by discretionary immunity); *Ellis v. City of Chi.*, 272 F.Supp.2d 729, 735-36 (N.D. Ill. 2003) (dismissing a discharge claim as barred by the Tort Immunity Act); *Zinnermon v. City of Chi. Police Dept.*, 209 F. Supp. 2d 908, 911 (N.D. Ill. 2002) (dismissing city as immune from retaliatory discharge claim); *Johnson v. Mers*, 664 N.E.2d 668 (Ill. App. Ct. 1996) (upholding summary judgment on a negligent hiring claim because hiring "is inherently discretionary"). The court concludes that

11

Doe's negligent hiring and retention claim in Count VIII is barred by the Tort Immunity Act and grants the Village's motion to dismiss that count.

As to the negligent supervision claim in Count IX, the court cannot determine from the complaint whether the supervision of Roe and other officers required the determination of policy or the exercise of discretion or was merely ministerial. If the supervision of police officers involved no discretion or policy determinations, § 10/2-201 would not apply. *See In re Chi. Flood Litig.*, 680 N.E.2d 265, 272 (Ill. 1997). Doe's complaint sheds no light on the nature of the acts of supervision in question, making it impossible to determine whether the defense of immunity applies. *See Hogan v. Smith*, No. 11–961–GPM, 2012 WL 1435402, at *3 (Apr. 25, 2012) ("Immunity, of course, is a defense, and thus the issue . . . is whether [the] complaint itself establishes as a matter of law that statutory immunity bars [the] negligent training and supervision claim."); *Patton v. Chi. Heights*, No. 09 C 5566, 2010 WL 1813478, at *3 (N.D. Ill. May 3, 2010) ("[W]hile intuitively, it would seem that the training of police officers would require discretion and involve policy determinations, cases are not to be decided on the basis of intuition."). The court acknowledges that some courts in this district have dismissed negligent supervision claims based on the Tort Immunity Act. *See Fuery v. City of Chi.*, No. 07 C 5428, at *6 (N.D. Ill. May 6, 2009) (dismissing negligent supervision claim based on Tort Immunity Act); *Reed v. City of Chi.*, No. 01 C 7865, 2002 WL 406983, at *3 (N.D. Ill. Mar. 4, 2002) (same). Here, however, the court concludes that further factual development is required to determine conclusively whether the Tort Immunity Act bars Doe's claim. The Village's motion to dismiss Count IX of the complaint is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, the Village's motion to dismiss is denied as to Counts III-VII and IX of the Second Amended Complaint. The motion to dismiss is granted as to Count VIII, and that count is dismissed with prejudice.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: May 17, 2013